Robert C. **VALIMONT**, Architect and R & G Properties, Petitioners,

v.

**DEPARTMENT OF LABOR AND INDUSTRY, INDUSTRIAL BOARD**, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 1995.

Decided Nov. 29, 1995.

---

John K. Shaffer, for petitioners.

Richard C. Lengler, Assistant Counsel, for respondent.

Before McGINLEY, and FRIEDMAN, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

Robert C. Valimont and R & G Properties (collectively, Petitioners) appeal from an order of the Department of Labor and Industry's (Department) Industrial Board (Board) denying Petitioners' request for a variance. We affirm.

Situated on a parcel of real estate in Doylestown, Pennsylvania, is a one-story condominium office building, with "attic truss construction," that is used as a dental office. (Board's Finding of Fact, No. 1.) In the space between the first floor and the attic trusses, a second floor single room, encompassing approximately 235 square feet, has been constructed for use as a private office for the dentist. (Board's Findings of Fact, Nos. 2, 7.)

The second floor office has only one means of egress, a stairway exiting at the interior *rear* portion of the first floor. (Board's Finding of Fact, No. 3.) The first floor, approximately 1,200 square feet in area, has only one exterior exit, located at the *front* of the building. (Board's Finding of Fact, No. 4.) Thus, the second level has no direct exit to grade and no direct exit path from the bottom of the stairway to the first floor exterior exit. (Board's Finding of Fact, No. 5.) The stairway connecting the first and second floors is the only opening between them. (Board's Finding of Fact, No. 6.)

On September 9, 1994, Petitioners requested a variance from Fire and Panic Regulations set forth in 34 Pa.Code § 58.21(a) and/or § 58.21(c), pertaining to the minimum number of exits for a second floor or a

mezzanine, as defined in 34 Pa.Code § 49.1.[1] (R.R. at 3a–4a.) The Board denied the request, and Petitioners requested reconsideration. (R.R. at 5a–6a.) Reconsideration was granted, and a hearing was held before the Board. (R.R. at 18a–22a.)

At the hearing, Petitioners urged the Board to grant a variance because: (1) the second level qualifies as a "mezzanine" of less than 1,000 square feet under 34 Pa.Code §§ 49.1 and 58.21(c), (R.R. at 42a); (2) the Board has granted variances for identical structures on previous occasions, (R.R. at 28a–29a); and (3) only the dentist would occupy the second level, (R.R. at 36a–37a).

The Board determined that, because the second level was not sufficiently open to the first floor to provide visual or audible awareness of fire or panic below, it was not a "mezzanine" under 34 Pa.Code § 49.1. The Board also decided that it was not bound by certain prior orders granting variances because those orders do not contain statements of facts or the Board's rationale for granting the variances. Finally, the Board concluded that the number of persons occupying the second level was irrelevant. Based on its findings and conclusions, the Board refused to grant a variance under 34 Pa.Code § 49.15(e).

█ Petitioners now appeal to this court,[2] arguing that: (1) the second level room is a "mezzanine" under 34 Pa.Code § 49.1; (2) Petitioners satisfied the requirements for the granting of a variance under 34 Pa.Code § 49.15(e); and (3) the Board should be bound by its previous orders granting variances for similar office suites.

## I.

Petitioners first contend that the second-level room qualifies as a "mezzanine" under 34 Pa.Code § 49.1. We disagree. 34 Pa.Code § 49.1 provides the following definition:

> *Mezzanine*—A floor level open to the floor below. A floor level shall be considered a story when it exceeds ⅓ of the area of the floor it is opened to. A space enclosed with floor to ceiling partitions shall be considered a story except for toilet facilities and incidental rooms which are not occupied.

█ The second-level room here is enclosed with floor to ceiling partitions on three sides and is only open to the lower floor on the fourth side where a stairway leads to the floor below. We do not believe that such a second-level structure is sufficiently open to the floor below to qualify as a "mezzanine" under 34 Pa.Code § 49.1. Indeed, we agree with the Board that, to qualify as a "mezzanine" under the regulation, a second level must be sufficiently open so that occupants of the second level can easily observe or hear fire and panic on the floor below. That is not the case here, where occupants of the second level can only see the first floor from the top of the stairway and where three floor-to-ceiling partitions hinder the occupants' ability to hear sound from the lower floor.[3]

## II.

Petitioners next contend that the Board should have granted them a variance because they satisfied all of the criteria for a variance

---

1. 34 Pa.Code § 58.21 (emphasis added) provides in pertinent part:
   (a) There shall be a minimum of two exits reasonably remote from each other, *except that one story buildings 1200 square feet or less may have one exit.* At least 50% of all required exits shall be exit discharge doors to the outside, stair towers or ramps.
   . . . .
   (c) *Mezzanine* levels shall have a minimum of two access paths *except that the Department may permit a single exit access from mezzanines less than 1,000 square feet* or mezzanines used exclusively for storage or mechanical equipment without a permanent occupancy.

2. Our scope of review in this matter is limited to a determination of whether constitutional rights were violated, whether the decision was rendered in accordance with the law, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Gnarra v. Department of Labor & Industry Industrial Board,* 658 A.2d 844 (Pa.Cmwlth.1995).

3. We note that 34 Pa.Code § 49.2 does not exempt private offices from compliance with the regulations.

listed in 34 Pa.Code § 49.15(e).[4] We disagree.

■ Essentially, Petitioners contend that the installation of interconnecting smoke and heat detectors and a sophisticated security system adequately protects occupants of the second level from the hazards of fire and panic.[5] While we acknowledge that the special systems installed by Petitioners can warn second floor occupants when there is fire or panic below, we also recognize, like the Board, that such technology does *not* provide second level occupants, having been warned, with a direct exit path to the exterior of the building.[6]

Because we believe it was appropriate for the Board to consider the absence of a direct exit path from the second floor to the exterior of the building, we cannot say that the Board erred in denying Petitioners' request for a variance under 34 Pa.Code § 49.15(e).[7]

### III.

Finally, Petitioners argue that the Board should be bound by its previous order granting a minimum exit variance for a similar office suite occupied by a doctor, whose name is Mullen.[8] Again, we disagree.

■ According to the record, the Board granted a second level minimum exit variance in 1985 for the office suite of Dr. Mullen. (R.R. at 7a.) However, as noted above, the Board considers many factors, some unrelated to the actual physical layout of the premises in question, when deciding whether or not to grant a variance under 34 Pa.Code § 49.15(e). Although the record before this court contains a floor plan of Dr. Mullen's office suite, the Board's order contains no statement of facts or rationale explaining what other factors the Board might have considered in granting a second level minimum exit variance in that particular instance.[9] Thus, there is no basis to support Petitioners' argument that the Board should be bound by its decision regarding Dr. Mullen's suite.

Accordingly, we affirm the order of the Board.

4.  34 Pa.Code § 49.15(e) (emphasis added) provides as follows:
    The Board may consider the following factors, *among others,* when reviewing and ruling upon a request for ... a variance ...:
    (1) The reasonableness of the ... rule and regulations as applied in the specific case.
    (2) The extent to which ... a variance will subject occupants to the hazards of fire and panic.
    (3) The availability of professional or technical personnel needed to come into compliance.
    (4) The availability of materials and equipment needed to come into compliance.
    (5) The efforts being made to safeguard occupants against the hazards of fire and panic.
    (6) The efforts being made to come into compliance as quickly as possible.
    (7) Compensatory fire safety features which will provide an equivalent degree of protection for the occupants.

5.  Petitioners also maintain that it is impossible to bring the structure into compliance with the regulations and still retain the attic truss construction.

6.  Petitioners conceded at the hearing that, in similar cases where the Board granted a variance, the structure provided occupants of the second level with a direct exit path to the outside. (R.R. at 37a; *see* floor plans, R.R. at 48a–52a.)

7.  Moreover, with respect to the factors listed in 34 Pa.Code § 49.15(e), the Board found that: (1) the minimum exit requirement of 34 Pa.Code § 58.21 was eminently reasonable; (2) Petitioners failed to show the unavailability of professionals or technicians and materials or equipment to achieve compliance; (3) the safety systems do not compensate for the lack of a second exit or safeguard occupants against the hazards *of fire and panic; and* (4) *Petitioners constructed* the second level prior to obtaining appropriate approvals. We have examined the record and found substantial evidence to support these findings.

8.  Petitioners also argue that the Board should be bound by its order granting a variance for a similar office suite occupied by another doctor, whose name is Sinaiko. However, that order does not grant a minimum exit variance under 34 Pa.Code § 58.21; rather, the order grants a variance with respect to the size of Dr. Sinaiko's loft area under 34 Pa.Code § 49.1. (R.R. at 16a.) Thus, the order is not applicable here.

9.  We note, for example, that there are three exterior exits on the first floor of Dr. Mullen's office suite. (R.R. at 51a.) Thus, unlike here, a *second floor occupant* would have three possible escape paths in the event of fire or panic.

*ORDER*

AND NOW, this 29th day of November, 1995, the order of the Department of Labor and Industry's Industrial Board, dated February 24, 1995, is AFFIRMED.